Q1RFDOEp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                    26 Cr. 25 (AT)

PETER ANDREW BRUMBERGS,

                                      Plea
            Defendant.

------------------------------x

                                      New York, N.Y.
                                      January 27, 2026
                                      10:00 a.m.

Before:

                  HON. ANALISA TORRES,

                                      District Judge

                      APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  PETER DAVIS
     Assistant United States Attorney

DAVID GOPSTEIN
     Attorney for Defendant

Also Present:

Vanessa Perdomo, Pretrial Services Officer

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

Q1RFDOEp

THE COURT:  Good morning.

We are here in the matter of *United States v. Peter Andrew Brumbergs.*

Would you make your appearance, please.

MR. DAVIS:  Good morning, your Honor.

Peter Davis for the government, and I'm joined by a representative from pretrial services.

MS. PERDOMO:  Good morning.

MR. GOPSTEIN:  Good morning, your Honor. David Gopstein and Sean Hecker from Hecker Fink on behalf of Mr. Brumbergs who is to my right.

THE COURT:  Please, be seated.  I apologize for my lateness.  There was a serious car accident, which caused a delay of about two hours.

On the 23rd of January, the government moved, with the consent of the defendant, for all filings in this matter to be sealed, that the case be captioned *United States v. John Doe* on the public docket and that all filings be subject to delayed docketing until further order of the Court.

The application has not been filed on the public docket.  Although there is a qualified right of public access to court documents, sealing filings may be warranted to protect witness law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

Q1RFDOEp

The docketing of this matters may be delayed in extraordinary situations.

The government represented by email, dated January 26, that "if the Court is contemplating anonymized docket entries which do not name the defendant or give a sense of the nature of the proceedings," then, "that would not present a risk to our investigation."

Why is the sealing and delayed docketing necessary?

MR. DAVIS:  Thank you, your Honor.

The government has law enforcement interest that could be jeopardized if Mr. Brumbergs' plea today, the subject matter of which or the nature of his plea becomes public, and so therefore the government seeks to seal the docket entries for a temporary period of time until those law enforcement interests are no longer required.

THE COURT:  Anything from the defense on this issue?

MR. GOPSTEIN:  Your Honor, we consent.

THE COURT:  I find that sealing or delayed docketing is warranted.  I'm required to identify a specific date or occurrence within a reasonable period of time, after which all submissions and orders not docketed will be filed on the public docket.

The government has represented via email that materials in this case can be unsealed if the grant jury returns an indictment against the defendant's coconspirators

Q1RFDOEp

and those individuals are arrested.

Is there any other date that you have in mind?

MR. DAVIS:  Your Honor, I think that's going to be the earliest date, and of course, we'll promptly update the Court on developments on that regard as soon as tomorrow or later this week.

As far as if the Court wants to pick a date and time further out, I think we can, of course, update you within a week or two.

THE COURT:  Based on the representations of counsel and my review of the record, I find that sealing of the transcript and future filings is necessary and narrowly tailored to protect the government's ongoing investigation. However, I do not find that these circumstances present the extraordinary situation where delayed docketing is required, and so I am going to seal the matter and await the news of the prosecution with respect to indictments, which I suppose that you're expecting very soon; is that correct?

MR. DAVIS:  That's right, your Honor.

THE COURT:  All right then.

(The Court conferred with the law clerk)

THE COURT:  And as I stated before, the caption will be *United States v. John Doe*.

My law clerk will now swear Mr. Brumbergs.

(Defendant sworn)

Q1RFDOEp

THE COURT:  Please be seated.

Mr. Brumbergs, you understand you're now under oath, and if you answer any of my questions falsely, you may be prosecuted for the separate crime of perjury?

THE DEFENDANT:  Yes.

THE COURT:  I understand that I must first arraign Mr. Brumbergs; is that right?

MR. DAVIS:  Yes, your Honor.

The defendant is here to waive indictment and plead guilty to an information.

THE COURT:  Mr. Brumbergs, did you receive a copy of the information in this case?

THE DEFENDANT:  Yes.

THE COURT:  Have you had an opportunity to read it and discuss it with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  Do you want me to read it to you now, or do you waive its public reading?

THE DEFENDANT:  I can waive the public reading.

THE COURT:  This document, which contains the charges against you is called an information and has been issued by the United States Attorney.

Under the Constitution, you have a right to be charged by an indictment issued by a grand jury instead of by an information.  A grand jury is a group of 23 ordinary citizens

Q1RFDOEp

that are called to jury service to hear the government's evidence in criminal cases and decide whether the evidence is sufficient to justify bringing you to trial.

In order to return an indictment, at least 12 of the grand jurors must vote for the indictment, finding that there is probable cause to believe that an offense was committed and that you committed it.

You have a right to have these charges considered by a grand jury, which means that without your consent, these charges could not even be brought unless approved by the grand jury. But if you waive indictment by the grand jury, the case will proceed against you based on the United States attorney's information, just as if you had been indicted.

You understand?

THE DEFENDANT: Yes.

THE COURT: My law clerk will show you the waiver of document, which I have marked as Court exhibit No. 1.

Is that your signature on the waiver of indictment form?

THE DEFENDANT: Yes.

THE COURT: Before you signed it, did you discuss it with your lawyer?

THE DEFENDANT: Yes.

THE COURT: He explained it to you?

THE DEFENDANT: Yes.

Q1RFDOEp

THE COURT:  You understand that by signing this form, you're giving up your right to have your case presented to a grand jury, and you're agreeing to permit these charges to be filed by the United States Attorney instead?

THE DEFENDANT:  Yes.

THE COURT:  You discussed with your lawyer the advantages and disadvantages of waiving indictment?

THE DEFENDANT:  Yes.

THE COURT:  Have any threats or promises been made, other than by the prosecution in the written cooperation agreement, to get you to waive indictment?

THE DEFENDANT:  No.

THE COURT:  Do you wish to give up your right to be charged by the grand jury?

THE DEFENDANT:  Yes.

THE COURT:  Does either attorney know of any reason that I should find that the defendant has knowingly and voluntarily waived his right to be indicted by a grand jury?

MR. DAVIS:  No, your Honor.  Thank you.

MR. GOPSTEIN:  No.

THE COURT:  I find that the defendant has knowingly -- I'll hear from the defense.

MR. GOPSTEIN:  No, your Honor.  Thank you.

THE COURT:  I do find that the defendant has knowingly and voluntarily waived his right to be indicted by a grand

Q1RFDOEp

jury, and I authorize the filing of the information.

THE COURT: Mr. Brumbergs, for the purpose of arraignment only, for the purpose of arraignment only, how do you plead to the charges listed in the information; guilty or not guilty?

THE DEFENDANT: Not guilty.

THE COURT: I'm told that you want to change your plea and enter a plea of guilty; right?

THE DEFENDANT: Yes.

THE COURT: Before deciding whether to accept your guilty plea, I'm going to ask you some questions. It is important that you answer any questions honestly and completely.

The purpose of these proceedings is to make sure that you understand your rights, to decide whether you're pleading guilty of your own free will, and to make sure that you're pleading guilty because you are guilty and not for another reason.

You understand?

THE DEFENDANT: Yes.

THE COURT: If you don't understand my questions or if you want, at any time to consult with your lawyer, please say so, because it is important that you understand every question before you answer.

How old are you?

THE DEFENDANT: I'm 45 years old.

Q1RFDOEp

THE COURT:  And how far did you go in school?

THE DEFENDANT:  Masters of accountancy.

THE COURT:  And where was that?

THE DEFENDANT:  Miami of Ohio University.

THE COURT:  And where did you do your undergraduate work?

THE DEFENDANT:  Miami of Ohio as well.

THE COURT:  Have you ever been treated or hospitalized for mental illness?

THE DEFENDANT:  No.

THE COURT:  Have you ever been addicted to drugs or alcohol?

THE DEFENDANT:  No.

THE COURT:  Are you now or have you recently been under the care of a doctor or psychiatrist?

THE DEFENDANT:  No.

THE COURT:  Have you taken any drugs, medicines, or pills or drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Is there any medication that you're supposed to take that you did not take?

THE DEFENDANT:  No.

THE COURT:  Your mind is clear today?

THE DEFENDANT:  Yes.

THE COURT:  You understand what's happening in this

Q1RFDOEp

proceeding?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Gopstein, have you discussed this matter with your client?

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  He understands the rights that he would be waiving by pleading guilty?

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  Is he capable of understanding the nature of these proceedings?

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  Does either attorney have any doubt as to the defendant's competence to plead at this time?

MR. DAVIS:  No, your Honor.

MR. GOPSTEIN:  No, your Honor.

THE COURT:  On the basis of defendant's responses to my questions, my observations of his demeanor here in court and the representations of counsel, I find that the defendant is fully competent to enter an informed plea of guilty at this time.

Mr. Brumbergs, have you had enough time and opportunity to discuss your case with your lawyer, including the decision of whether or not to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with him the charges

Q1RFDOEp

contained in the information and any possible defenses that you might have to the charges?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with your attorney all of the facts about your involvement in this matter?

THE DEFENDANT:  Yes.

THE COURT:  Has he told you the consequences of pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  You're satisfied with your attorney's representation of you?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to explain certain constitutional rights that you have.  These are rights that you'll be giving up if you enter a guilty plea.  Please listen carefully to what I'm about to say, and if you don't understand something, stop me, and your attorney or I will explain the matter more fully.

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charges in the information.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  And if you did plead not guilty, you would be entitled, under the Constitution, to a speedy and public

Q1RFDOEp

trial by a jury.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would be presumed to be innocent, and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty.  That means that you would not have to prove you were innocent and you could not be convicted unless a jury of 12 people agreed unanimously that you're guilty beyond a reasonable doubt.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial and at every stage of your case, you would be entitled to be represented by a lawyer.  And if you could not afford a lawyer, one would be appointed at public expense, free of charge, to represent you.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, the witnesses for the prosecution would have to come to Court and testify in your presence where you could see and hear them, and your lawyer could cross-examine them.  And if you wanted, your lawyer could offer evidence on your behalf.

You would be able to use the Court's power to compel witnesses to come to Court to testify in your defense, even if

Q1RFDOEp

they did not want it come.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would have the right to testify if you wanted to, but you would also have the right not to testify.  And if you chose not to testify, that could not be used against you in any way.  No inference or suggestion of guilt could be made from the fact that you did not testify.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at trial, you would have the right to appeal that verdict to a higher Court.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  As I said before, you have the right to plead not guilty.  Even right now, even as you sit here for the purpose of entering a guilty plea, you have the right to change your mind, persist in your not guilty plea, and go to trial.

But, if you do plead guilty and I accept your plea, you will be giving up your right to trial and the other rights that go along with it that I have just described.

If you plead guilty, there will be no trial.  All that will remain to be done is to impose sentence.  I will enter a judgment of guilty and sentence you on the basis of your guilty plea after considering whatever submissions I get from

Q1RFDOEp

you, your lawyer, and the government as well as a presentence

report prepared by the probation department.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, you will also have to

give up your right not to incriminate yourself, because I will,

first, ask you questions about what you did in order to satisfy

myself that you are guilty as charged.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand each and every one of

these rights?

THE DEFENDANT:  Yes.

THE COURT:  You're willing to give up your right to a

trial and the other rights that I have just described?

THE DEFENDANT:  Yes.

THE COURT:  You said before that you have read the

information containing the charges against you, and I

understand that you intend to plead guilty to Count One of the

information, conspiracy to commit wire fraud affecting a

financial institution and to commit bank fraud in violation of

Title 18, U.S.C. § 1349; Counts Two, Three, Five and Seven of

the information, wire fraud affecting a financial institution,

in violation of Title 18, U.S.C. § 1343 and 2; Counts Four and

Six of the information, bank fraud, in violation of Title 18,

Q1RFDOEp

U.S.C. § 1344 and 2, and Count Eight of the information, conspiracy to commit money laundering, in violation of Title 18, U.S.C. § 1956(h); is that correct?

THE DEFENDANT:  Yes.

THE COURT:  AUSA Davis, would you state the elements of offenses in question?

MR. DAVIS:  Yes, your Honor.

Count One charges the defendant with conspiracy to commit bank fraud and wire fraud affecting a financial institution.  The crime of conspiracy has two elements:

First, that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit a fraud crime.  Here that crime is bank fraud and wire fraud affecting a financial institution, as charged in the information;

Second, that the defendant knew of the unlawful purpose of that plan and willfully joined in it.  The conspiracy here has two objects: bank fraud, wire fraud and affecting a financial institution.  I'll now discuss the elements.

THE COURT:  One moment.

(The Court conferred with the law clerk)

THE COURT:  Go ahead.

MR. DAVIS:  Sorry, Judge.

MS. PERDOMO:  I'll now talk about the objects, the

Q1RFDOEp

elements themselves.  As to bank fraud, that count, that object has three elements:

First, the defendant knowingly executed a scheme or artifice to defraud a financial institution or knowingly executed a scheme to obtain the money, funds, or other property owned by or under the control of a financial institution by means of false or fraudulent pretenses, representations, or promises;

Second, that the defendant did so with the intent to deceive a financial institution and to obtain financial institution property;

Third, that the financial institution was then insured by the FDIC, Federal Deposit Insurance Corporation.

I'll now talk about the second object, wire fraud affecting a financial institution.  That object has four elements:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses representations or promises;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud:

Third, that in execution of that scheme, the defendant used or caused the use of interstate wires, and;

Q1RFDOEp

Fourth, that the scheme affected a financial institution.

As discussed, Counts Two, Three, Five, and Seven charged defendant substantively with wire fraud affecting a financial institution, which has the elements I've described above.  And Counts Four and Six charged defendant with bank fraud as a substantive offense of the elements of which I just described, and Count Eight, which charges the defendant with money laundering conspiracy, has the following elements:

First, that two or more persons agreed to conduct a financial transaction;

Second, the financial transaction involved the proceeds of a specified unlawful activity;

Third, the agreement to conduct the transaction was made with the knowledge that the property involved was the proceeds of some form of unlawful activity, and.

Fourth, that the financial transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity;

Finally, the government would also have to prove venue by a preponderance of the evidence for wire fraud affecting a financial institution.  Venue requires showing that interstate wire went to or from the Southern District of New York.  For the conspiracy counts, and bank fraud counts, venue requires

Q1RFDOEp

showing that some act in furtherance of the crime happened here in the Southern District of New York.

THE COURT:  Mr. Brumbergs, you understand that were you to go to trial, the government would have to prove all of those elements beyond a reasonable doubt accept for venue, which it would have to prove by a preponderance of the evidence?

THE DEFENDANT:  Yes.

THE COURT:  Now I'm going to tell you about the maximum penalties.  The maximum penalty means the most that could possibly be imposed.  It doesn't mean that is what you necessarily will receive, but you have to understand that by pleading guilty, you're exposing yourself to the possibility of receiving any combination of punishments up to the maximums that I'm about to describe.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  Let's start with Counts One through Seven, all of which feature the same statutory maximum penalties. First, with regard your liberty, the maximum term of imprisonment for each of Counts One through Seven is 30 years, which could be followed by up to five years of supervised release.

Supervised release means that if you're sentenced to prison after you're released, you'll be subject to supervision

Q1RFDOEp

by the probation department.  There will be rules of supervised release that you'll have to follow, and if you violate the rules, you can be returned to prison without a jury trial to serve additional time beyond your original sentence.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  You should also understand that parole has been abolished in the federal system, and if you're sentenced to prison, you will not be released early on parole, although there is a limited opportunity to earn credit for good behavior.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  In addition to these restrictions on your liberty, the maximum punishment for each of Counts One through Seven also includes certain financial penalties.  The maximum allowable fine is $1 million, or twice the gain you received from the crime or twice the loss to any victims, whichever is greater.

You understand that these are the maximum penalties for Counts One through Seven?

THE DEFENDANT:  Yes.

THE COURT:  Additionally, Count Eight, the maximum term of imprisonment for this crime is 20 years, which could be followed by up to five years of supervised release.  The

Q1RFDOEp

maximum allowable five the greater or $500,000, or twice the value of the monetary instruments or funds involved, or twice the gross grain you received from the crime or the loss to the victims.

In pleading guilty to Count Eight, you will also be liable to the United States for a civil penalty under 18 U.S.C.Title 18, U.S.C. § 1956(b)(1), which shall be limited by the value of the property, funds, or monetary instruments involved in the transaction, or $10,000, whichever is greater.

You understand that these are --

(The Court conferred with the law clerk)

THE COURT:  You understand that these are the maximum penalties for Counts One through Seven; correct?

THE DEFENDANT:  Yes.

THE COURT:  And Count Eight.

THE DEFENDANT:  Yes.

THE COURT:  I'm also required to impose a mandatory special assessment of $100 on each count of conviction, for a total of $800.

In addition, I must order restitution to any person or entities injured as a result of your criminal conduct.

The information also includes a forfeiture allegation or allegations, which I will read to you now.  As a result of committing the offenses alleged in Counts One through Seven of the information, you shall forfeit to the United States,

Q1RFDOEp

pursuant to Title 18 U.S.C. § 982(a)(2)(A), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in Counts one through Seven, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

As a result of committing the offense alleged in Count Eight of this information, you shall forfeit to the United States, pursuant to Title 18 U.S.C. § 982(a)(1), any and all property, real and personal, involved in said offense or property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in the offense.

You understand that it is possible, taking all the counts together, that you could be sent to prison for up to 230 years?

THE DEFENDANT: Yes.

THE COURT: Please understand that I'm just telling you about the punishments that are part of the sentence. Being convicted of a felony, even if by a plea of guilty, may have other consequences.

Are you a U.S. citizen?

THE DEFENDANT: Yes.

THE COURT: How did you become a citizen?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q1RFDOEp

THE DEFENDANT:  I was born here.

THE COURT:  If you are, indeed, a U.S. citizen, you may lose certain valuable civil rights, to the extent that you have them now, as a result of your guilty plea such as: the right to vote; the right to hold public office; the right to serve on a jury, and; the right to possess a firearm.

Mr. Gopstein,Mr. Gopstein is the defendant now serving a state or federal sentence or being prosecuted in state court for any other crime?

MR. GOPSTEIN:  No, your Honor.

THE COURT:  In imposing a sentence, federal judges are required to consider the recommendations of the federal sentencing guidelines.  The guidelines are a complicated set of rules for determining an appropriate sentence.  Judges must pay attention to the guidelines in determining a sentence, but in the end, the judge is required to give the sentence that she believes best satisfies the purposes of the criminal law, even if that is higher or lower than the guideline recommendation.

Did you discuss the guidelines with your attorney, Mr. Gopstein?

THE DEFENDANT:  Yes.

THE COURT:  And you understand that the guidelines are only recommendations to the Court?

THE DEFENDANT:  Yes.

THE COURT:  I understand that there is a written

Q1RFDOEp

cooperation agreement that you have signed; is that right?

THE DEFENDANT:  Yes.

THE COURT:  My law clerk will show you the original letter cooperation agreement, dated January 22, 2026, from Assistant United States Attorney Peter Davis to your attorney.

Is that your signature on the last page of the agreement?

THE DEFENDANT:  Yes.

THE COURT:  You read it before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  You discussed it with your attorney before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  I realize it is a long document and contains some technical legal language, but after discussing it with your lawyer, do you understand the terms of the agreement?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that under the agreement, you're giving up the right to withdraw your plea or challenge your conviction on a few specific grounds, which I am about to describe.  First, under the agreement, you're giving up your right to withdraw your plea or to challenge your conviction on the grounds that the government has failed to produce the following categories of material as to the date of the signing of the agreement: any material that the government

Q1RFDOEp

was required to produce during discovery; statements of any government witness relating to the subject matter about which the witness would be expected to testify; material that could be used to impeach or attack the testimony of any government witness, and; material favorable to you that could cast doubt on your guilt or reduce your sentence other than information establishing your factual sentence.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  Second, under the agreement, you're also giving up the right to withdraw your guilty plea and the right to challenge your conviction or sentence based on any actual or perceived or adverse immigration consequences, including deportation, resulting from the guilty plea and conviction.

So, for example, if it turned out that you were not a United States citizen and you were deported following your guilty plea and conviction, or if the government later turns over material that would tend to cast doubt on your guilt, other than material that establishes your innocence, you will not be able to withdraw your plea or challenge your conviction on those grounds.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  You willingly signed the cooperation agreement?

Q1RFDOEp

THE DEFENDANT:  Yes.

THE COURT:  Does the written cooperation agreement constitute your complete and total understanding of the agreement between you and the government?

THE DEFENDANT:  Yes.

THE COURT:  You understand that if your lawyer or anyone else has attempted to predict what your sentence will be, that their prediction could be wrong?

THE DEFENDANT:  Yes.

THE COURT:  I understand that -- withdrawn.  I'm asking you this because no one, not your lawyer or the prosecutor, not even I can be sure now what your sentence will be, because that sentence cannot be determined until I receive the presentence report and until I have decided what is the correct calculation of the range recommended by the guidelines and whether there is any basis for not following the recommendation.

Even if your sentence is different from what your attorney or anyone else has predicted, even if it's different from that you expect, once you have pleaded guilty, you will not be able to withdraw your plea.

You understand?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that it is up to the government, not to me, to decide whether your cooperation has

Q1RFDOEp

been good enough and productive enough for the government to ask me to impose a sentence below the sentence that is recommended by the guidelines?

THE DEFENDANT:  Yes.

THE COURT:  And even if the government does make such a motion, it is still up to me to decide whether to give you any credit for your cooperation, so the prosecutor cannot promise you that you will get credit for your cooperation because that's going to be up to me.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Other than what is contained in the cooperation agreement, has anyone made any promise or offered you any inducement to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened, bribed, or forced you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  Now that you have been advised of the charges that you face and the rights that you're giving up, is it still your intention to plead guilty to Counts One through Eight of the information?

Q1RFDOEp

THE DEFENDANT:  Yes.

THE COURT:  With respect to Counts One, Two, Three, Four, Five, Six, Seven, and Eight of the information, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  Now, tell me, in your own words, what you did that makes you believe that you are guilty of the charges in the information.

THE DEFENDANT:  From May 2014 until October 2025, I was employed by First Brands Group.  It's an Auto Parts company based in Cleveland, Ohio.  I worked in various finance and accounting roles and was most recently promoted to senior vice president of finance in 2023.

THE COURT:  Do you live in Cleveland?

THE DEFENDANT:  Yes.

THE COURT:  Go ahead.

THE DEFENDANT:  For Counts One, Five and Six, between approximately 2018 through 2025, I agreed with others and worked to provide misleading financial statements to lenders in order to obtain financing and asset-backed financing for the benefit of the company First Brands Group.

In furtherance of this agreement, we worked to submit quarterly financial statements that included accounting adjustments that misstated First Brand's financial condition and results.  We also provided balance sheets that

Q1RFDOEp

misrepresented the nature and existence of inventory and equipment that had been pledged or sold as collateral to other lenders.

I knew at the time that the financial statements reported to lenders were not a true representation of the company's financial condition.

THE COURT:  So, are you saying that they were misleading because they presented the company's financials in a more favorable light?

THE DEFENDANT:  Correct.

THE COURT:  Go ahead.

THE DEFENDANT:  For Count Two, between approximately 2020 and 2025, I, together with others, misrepresented First Brands' accounts receivable to third-party factoring companies and an investment bank in order to obtain financing for the company First Brands.

First Brands sold this accounts receivable to factoring companies and would collect payments from these customers once they became due.

I, together with others, submitted falsified customer invoice information to the factoring companies, and I knew the customer information that was provided was false.

JUROR:  So, I'd like you to explain to me -- I want you to elaborate exactly how this worked, this aspect with the factoring companies.

Q1RFDOEp

THE DEFENDANT:  The factoring companies?

So, we would submit invoices to sell to a factoring company as a loan, as a collateral, and the amount of the invoices were inflated.  It was not the actual invoice amounts that we sold to customers.  They were higher amounts that secured a higher financing or higher proceeds that we received from the factoring companies.

THE COURT:  So, you led the factoring companies to believe that there was more income?

THE DEFENDANT:  There was more collateral; correct --

THE COURT:  Go ahead.

THE DEFENDANT:  -- than there was in reality; correct.

For Counts Three and Four, between approximately 2020 and 2025, I, together with others, misrepresented First Brands's accounts payable levels to supply chain financiers -- which included banks -- in order to obtain financing for First Brands.

First Brands had supply chain financing programs with multiple financiers, which was intended to pay First Brands' supplier invoices directly, and First Brands would then repay the financiers at a later date.

Some of the supplier invoices that First Brands generated to submit to the financiers did not reflect First Brands' true accounts payable balances.

I, together with others, worked to submit misleading

Case 1:26-cr-00025-AT   Document 13   Filed 02/25/26   Page 30 of 36      30
Q1RFDOEp

financial statements that included falsified accounting adjustments to these supply chain financiers.  I knew that some of the supply invoices were false and the financial statements provided to these lenders was not a true representation of the company's financial condition at that time.

THE COURT:  So, you're saying that they were false to the extent that they were inflated.

THE DEFENDANT:  They were inflated or they didn't represent actual payables to other suppliers.

THE COURT:  Go ahead.

THE DEFENDANT:  For Count Seven, between approximately 2020 and 2025, I, together with others, worked to misrepresent the nature and existence of collateral that was pledged by First Brands in connection with financing agreements with off-balance-sheet lenders in order to obtain financing for First Brands.

Among other things, First Brands did not disclose that certain collateral had already been pledged to other lenders. I knew that this representation to off-balance-sheet lenders was false.

For Count Eight, between approximately 2022 and 2025, I agreed with others to structure cash transfers in order to conceal the source of proceeds that were fraudulently obtained from off-balance-sheet lenders.  I agreed with others to conceal the source and nature of these funds by dividing the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q1RFDOEp

cash transfers into smaller amounts and sending them to be received into multiple back accounts that the company owned.

In furtherance of the conduct I just described, we used, among other things, electronic communications.

So, given these facts, I want to apologize for my actions, as I take complete responsibility for the decisions that I made. My conduct was my choice, and it was not a mistake of circumstance.

And with that, I regret the harm it has caused so many people. My actions were given by poor judgment and misplaced priorities, and I'm truly sorry for the losses and damages that were caused.

THE COURT: So, when you did these things, you knew that what you were doing was wrong and illegal?

THE DEFENDANT: Yes.

THE COURT: You may be seated.

AUSA Davis, are there any additional questions that you would like me to put to the defendant?

MR. DAVIS: No, your Honor.

And I can briefly proffer on venue, if I may. As you heard, Judge, many of the victims that Mr. Brumbergs described were banks and financial institutions. I can proffer to the Court, they include banks and financial institutions that have teams here in the Southern District of New York -- Jeffries, Raistone, Evolution Capital Partners, to name a few -- and that

Q1RFDOEp

wires, in furtherance of these schemes, therefore, flowed into the Southern District.

Thank you.

THE COURT:  So in addition to the bank victims, aren't there other victims involved here?

MR. DAVIS:  Yes, your Honor.

Say, as the Court may be aware, this company has filed for bankruptcy, and right now, there's a number of creditors in that bankruptcy that are seeking billions of dollars in bad debt from the company.

THE COURT:  Well, aren't there other victims, for example, the employees who may have suffered financially?

MR. DAVIS:  There's, of course, a collateral consequence to most every fraud in that there a number of employees.  This is a company, at it's peek, approximately 26,000 employees.  There are a number of employees that had no awareness of the fraud and who may be suffering the consequences of now working for a company that's deep into bankruptcy with prospects that are dwindling.

So, if that's the Court's question, your Honor, I think that's right.

Thank you, Judge.

THE COURT:  And the evidence that the government would use, were the defendant to go to trial.

MR. DAVIS:  Thank you, your Honor.

Q1RFDOEp

The categories of evidence we would expect to present at trial against the defendant would include: documentary evidence, including email records; records of the inflated invoices that the defendant just described; witness testimony, including testimony from other First Brands employees who would give the jury a sense of the nature of the scheme and how it worked, and; of course, with testimony of the victims who received these false numbers and provided money in exchange.

Thank you, Judge.

THE COURT:  Mr. Brumbergs, is it your belief that the company would not have obtained the financing or the extent of financing, were it not for these misrepresentations?

THE DEFENDANT:  Yes.

THE COURT:  And, the attorneys all agree that there is a sufficient factual predicate for a guilty plea?

MR. DAVIS:  Yes, your Honor.

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  Mr. Gopstein, do you know of any valid defense that would prevail at trial?

MR. GOPSTEIN:  No, your Honor.

THE COURT:  Does either attorney know of any reason that I should not accept the defendant's plea of guilty?

MR. DAVIS:  No, your Honor.

MR. GOPSTEIN:  No, your Honor.

Q1RFDOEp

THE COURT:  Mr. Brumbergs, as you've acknowledged that you are, in fact, guilty as charged in the information, because I'm satisfied that you know of your rights, including your right to go to trial, and that you're aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on Counts One through Eight of the information.

The probation department will want to interview you in connection with the presentence report that it will prepare.

Does defense counsel wish to be present for any interview?

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  I direct that there shall be no interview unless counsel is present.

If you choose, Mr. Brumbergs, to speak to probation, make sure that anything that you say is truthful and accurate.  I will read the report carefully.  It is important to me in deciding what sentence to impose.  You and your lawyer have a right to examine the report and comment on it at the time of sentencing.  I urge you to read it and discuss it with your lawyer.  If there are any mistakes in it, point them out to your lawyer so that he can bring them to my attention before sentencing.

I don't believe that the prosecution has mentioned the

Q1RFDOEp

actual monetary extent of the fraud involved.

MR. DAVIS:  So, hard to measure, Judge.  But I would say, as far as the factoring piece, for example, our understanding is that we're talking in the hundreds of millions, if not billions of dollars of financing.

And one other measurement is just, simply, the amount of outstanding debt that the company had versus what was on its books at the time of the bankruptcy filing, which, it is our understanding that it had, you know, a very small amount of money versus billions of dollars of debt that it's looking to pay out and so, a pervasive amount of fraud that's totaling many hundreds of millions of dollars, Judge.

THE COURT:  Sentence is set for June 22 at 11 a.m.

The government shall provide the probation officer with its factual statement within seven days.  Defense counsel must arrange for defendant to be interviewed by probation within the next two weeks.  The defense submission is due on June 5, and the government's submission is due on June 12.

I understand that the parties have reached on agreement on bail; is that right?

MR. DAVIS:  Yes, your Honor.

THE COURT:  And what is the agreement?

MR. DAVIS:  Your Honor, the parties would propose the following conditions for the Court's consideration: the defendant's travel be restricted to the continental United

Q1RFDOEp

States; second, that he post a $1 million personal recognizance bond cosigned by two financially-responsible persons with two weeks to meet that particular condition, and; third that he adhere to the standard conditions of release, meaning that he not commit another federal, state, or local crime while on pretrial supervision and that today, the defendant be released on a signature.

Thank you.

THE COURT:  Has he turned over his passport?

MR. GOPSTEIN:  Not at this time, your Honor.

THE COURT:  He needs to turn over his passport.

MR. GOPSTEIN:  We have it today.

THE COURT:  And the defense consents to these conditions?

MR. GOPSTEIN:  Yes, your Honor.

THE COURT:  Mr. Brumbergs is released on bail on the agreed upon conditions, including my condition that he turn over his passport.

Are there any further applications?

MR. DAVIS:  No, Judge.  Thank you very much.

MR. GOPSTEIN:  No, your Honor.  Thank you.

THE COURT:  The matter is adjourned.

(Adjourned)